Romelyn B. Garner,  Pro se
1788 Sherbrooke St,
San Diego, California 92139
(619) 434-3395

FILED

08 MAY 12 PM 1:48

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

---

ROMELYN B. GARNER,                )
                                  )
        Plaintiff,                )
                                  )    CASE NO.
Vs.                               )
                                  )    '08 CV 0847 J WMc
WORLD SAVINGS BANK, and           )
GOLDEN WEST SAVINGS ASSN.         )
                                  )
        Defendants.               )
                                  )
_____)

## VERIFIED COMPLAINT

COMES NOW the Plaintiff, ROMELYN B. GARNER, pro-se, and sues Defendant

WORLD SAVINGS BANK; and GOLDEN WEST SAVINGS ASSOCIATION, and as

grounds therefore would state as follows:

## PRELIMINARY STATEMENT

1                                                        1.

2

3          1.   This Complaint is filed under the Truth in Lending Act, 15 U.S.C. section 1601

4

5     hereinafter called the "Act") to enforce the plaintiff's right to rescind a consumer credit

6

7     transaction, to void the Defendant's security interest in the Plaintiff's homes, and to

8

9     recover statutory damages, reasonable fees and cost by reason of the Defendant's

10

11    violations of the Act and Regulation Z, 12 C.F.R. section 226 (hereinafter called

12

13    "Regulation Z"). Plaintiff also seeks damages for Defendant's violations of the Deceptive

14

15    and Unfair Trade Practices Act 15 U.S.C. chapter 2 subchapter 1 section 45.

16

17                                              JURISDICTION

18                                                       2.

19          Jurisdiction is conferred on this Court by 15 U.S.C. section 1640 (e) and

20

21    28 U.S.C. sections 1331, 1337. The Court has authority to issue a declaratory

22

23    judgment by virtue of 28 U.S.C. section 2201.

24

1                          PARTIES

2                             3.

3        The Plaintiff, ROMELYN B. GARNER is a natural person residing at 1788 Sherbrooke

4

5  St, San Diego, California 92139

6

7                             4.

8        Defendant WORLD SAVINGS BANK is a corporation organized and existing pursuant

9

10  to the Laws of the state of California, engaged in the business of mortgage financing at

11

12  4101 Wiseman Boulevard, T6F2, San Antonio, Tx 78251, and Defendant GOLDEN

13

14  WEST SAVINGS ASSOCIATION SERVICE is the duly appointed substitute trustee doing

15

16  business at P.O.Box 34957, San Antonio, Tx 78265

17

18                            6.

19

20       At all times material hereto, the Defendants, in the ordinary course of its business,

21

22  regularly extended, or offered to extend, consumer credit, for which a finance charge is or

23

24

1  may be imposed or which, by written agreement, is payable in more than four

2

3  installments.

4

5                              FACTUAL ALLEGATIONS

6                                          7

7          On or about December 20, 2006, Plaintiff entered into a consumer credit

8

9  transaction ("the transaction") with Defendant in which the extended consumer credit

10

11  was subject to a finance charge and which was initially payable to the Defendants.

12

13                                          8

14          A true and correct copy of the credit agreement evidencing the transaction is

15

16  attached hereto, marked as PLAINTIFF'S EXHIBIT A (Closing Instructions), and by reference

17  is incorporated

18

19  herein.

20                                          9

21

22          As part of this consumer credit transaction, the Defendants retained a security

23  interest in 1788 Sherbrooke St, San Diego, California, 92139, which is Plaintiff's home.

24

10.

The security interest was not created to finance the acquisition or initial

construction of Plaintiff's home.

11.

A true and correct copy of the mortgage evidencing the Defendant's security

interest is attached hereto, marked PLAINTIFF'S EXHIBIT B (Security Agreement), and by

reference is incorporated herein.

FIRST CAUSE OF ACTION

12.

This consumer credit transaction was subject to the Plaintiff's right of rescission

as described by 15 U.S.C. section 1635 and Regulation Z, 12 C.F.R. section 226.23.

13.

In the course of the consumer credit transaction Defendant violated 15 U.S.C.

Section 1635 (a) and Regulation Z section 226.23 (b) by failing to deliver to the Plaintiff

two copies of a notice of the right to rescind that:

     a.   Identified the transaction.

     b.   Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

     c.   Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

     d.   Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose designating the address of Defendant's place of business.

     e.   Clearly and conspicuously disclosed the effects of the transaction.

     f.   Clearly and conspicuously disclosed the date the rescission period expired.

14.

The disclosure statement issued in conjunction with this consumer credit

transaction, and attached as PLAINTIFF'S EXHIBIT C (TILA Disclosure statement), violated

the requirements of

Truth in Lending and Regulation Z in the following and other respects:

    a.  By failing to include in the finance charge certain charges imposed by
The Defendant payable by Plaintiff incident to the extension of credit as
required by 15 U.S.C. section 1605 and Regulation Z, section 226.4,
Thus improperly disclosing the finance charge in violation of 15 USC section
1638 (a) (3) and Regulation Z section 226.18 (d). Such amounts include, but
are not limited to

        i.    The broker fee.

        ii.    The credit report fee, which is not a bona fide and reasonable fee.

        iii.    The recording fees in excess of the actual recording fee which are
therefore not a "bona fide and reasonable" fee.

        iv.    The settlement or Closing fee.

    b.  By improperly including certain charges, in the amount financed, which are
finance charges, including but not limited to those itemized in Paragraph 12
(a) herein, the Defendant improperly disclosed the amount financed in
violation of 15 U.S.C. section 1638 (a) (2) and Regulation Z, section 226.18
(b); and

    c.  By calculating the annual percentage rate (APR) based upon improperly
calculated and disclosed finance charges and amount financed, 15 U.S.C.
section 1606, Regulation Z, section 226.22, the Defendant understated the

1    disclosed annual percentage rate in violation of 15 U.S.C. section 1638 (a) (4)

2    and Regulation Z, section 226.18 (c).

3

4    15.

5

6    The disclosures improperly made by Defendant as itemized in paragraph 13 are

7

8    material disclosures as defined in the Truth in Lending Act, 15 U.S.C. section 1602 (u),

9

10   Regulation Z226.23 n. 48.

11

12   16.

13

14   The finance charge and APR were underdisclosed by more that the tolerance

15

16   Levels set forth in U.S.C. section 1635 (f).

17

18   17.

19

20   By reason of the material violations of 15 U.S.C. section 1638, Plaintiff has a

21

22   right of rescission for three years from the date of consummation of the loan pursuant to

23

24

1   15 U.S.C. (f).

2

3                                    18.

4

5       Plaintiff rescinded the transaction by sending to Defendants at their business

6

7   address by mail a notice of rescission.

8

9                                    19.

10

11      More than 20 calendar days have passed and Defendants have failed to take any

12

13  action necessary or appropriate to reflect the termination of any security interest created

14

15  under this transaction, including the security interest describe as required by 15 U.S.C.

16

17  section 1635 (b) and Regulation Z section 226.23 (d) (2).

18

19                                   20.

20

21      The Defendants have failed to return to the Plaintiff any money or property given

22

23  by the Plaintiff to anyone, including the Defendant, as required by 15 U.S.C. 1635 (b)

24

1   and Regulation Z 226.23 (d) (2).

2

3                                     21.

4

5      As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15

6

7   U.S.C. sections 1635 (a), 1640 (a), and 1641 (c), Defendants are liable to Plaintiff for:

8

9              a.  Rescission of this transaction.

10             b.  Termination of any security interest in Plaintiff's property created

11                  under the transaction

12             c.  Return of any money or property given by the Plaintiff to anyone

13                  including the Defendant, in connection with this transaction.

14             d.  Statutory damages for disclosure violations.

15             e.  Statutory damages for failure to respond properly to Plaintiff's

16                  rescission notice.

17             f.  Forefeiture of return of loan proceeds.

18             g.  Actual damages in an account to be determined at trial.

19             h.  Costs of this action.

20

21                              PRAYER FOR RELIEF

22

23      WHEREFORE, it is respectfully prayed that this Court:

24

1

2      1.  Assume jurisdiction of this case.

3      2.  Declare the security interest in Plaintiff's home void.

4      3.  Rescind the subject loan transaction.

5      4.  Order Defendants to take all action necessary to terminate any security interest in

6          Plaintiff's property created under the transaction and that the Court declare all such

7          security interest void, including but not limited to the mortgage related to the subject

8          transaction.

9      5.  Order the return to the Plaintiff of any money or property given by the Plaintiff to

10         anyone, including Defendants, in connection with the transaction.

11     6.  Enjoin Defendants, during the pendency of this action, and permanently thereafter,

12         from instituting, prosecuting, or maintaining foreclosure proceedings on the

13         Plaintiff's property, from recording any deeds or mortgages regarding the property or

14         from otherwise taking any steps to deprive Plaintiff of ownership of the property.

15     7.  Award the Plaintiff statutory damages for the disclosure violation, in the amount of

16         twice the finance charge in connection with this transaction, but not less than $200 or

17         more than $2,000 as provided under 15 U.S.C. section 1640 (a).;

18     8.  Award the Plaintiff statutory damages for Defendant's failure to respond properly to

19         the Plaintiff's rescission notice, in the amount of twice the finance charge in

20         connection with this transaction, but not less than $200 or more than $2,000 as

21         provided under 15 U.S.C. 1640 (a).

22     9.  Order that, because of Defendant's failure to respond to the Plaintiff's notice of

23         rescission, the Plaintiff has no duty to tender, but in the alternative, if tender is

24

1    required, determine the amount of the tender obligation in light of all of the Plaintiff's

2    claims, and order the Defendant to accept tender on reasonable terms and over a

3    reasonable period of time;

4    10. Award actual damages in an amount to be established at trial;

5    11. Award Plaintiff costs

6    12. Award such other and further relief as the Court deems just and proper.

7

8                                    **VERIFICATION**

9

10    Plaintiff/Affiant declares that she has read the foregoing Verified

11

12    Complaint and under penalty of perjury that the foregoing facts and allegations as

13

14    contained therein are true and correct.

15

16    _____            5-12-08
      Romelyn B. Garner,    Plaintiff/Affiant      Date

17

18

19

20

21

22

23

24

1

**CERTIFICATE OF SERVICE**

2

3        I HEREBY CERTIFY that a true and correct copy of the foregoing Verified  Complaint

4   has been furnished  By USPS Certified Mail Return Receipt Requested, to Defendants WORLD

5   SAVINGS BANK,4101 Wiseman Blvd., San Antonio, TCX 78251 and GOLDEN WEST

6   SAVINGS ASSOCIATION P.O.Box 34957, San Antonio, Tx  78265 this ____day of May,

7   2008.

8

9

10

11        _____          5-12-08
          Romelyn B. Garner,    Plaintiff, Pro se      Date
12        1788 Sherbrooke St.
          San Diego, CA  92139
13        Phone (619) 434-3395

14

15

16

17

18

19

20

21

22

23

24



EXHIBIT "A"

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS (4) |
|---|---|

TO:  CALIFORNIA TITLE COMPANY
     3466 CAMINO DEL RIO SOUTH
     SUITE # 200
     SAN DIEGO, CA 92108

ATTN: ELLA B. RUIZ
      (619)640-1100
FAX # (619)640-1146
      CHICAGO TITLE COMPANY
      38028288-P05

BORROWER PHONE NUMBERS
HOME: (619)479-8895
WORK: (858)518-0475

DATE:  NOVEMBER 07, 2003
LOAN NUMBER: 0021900923
CONCURRENT LOAN NO.: N/A
GF/ORDER/FILE NO.:  100777-ER
BORROWER(S):
     TOMMY GARNER
     ROMELYN GARNER

PROPERTY ADDRESS:
     1788 SHERBROOKE STREET
     SAN DIEGO, CA 92139

## * * * ATTENTION CLOSING AGENTS * * *

### THIS DOCUMENT CONSTITUTES WORLD SAVINGS' CLOSING INSTRUCTIONS FOR LOAN NUMBER  0021900923  , WHICH IS TO BE A FIRST  LIEN.

## INDEX

SECTION I: . . . . . . . . . . . .  GENERAL INSTRUCTIONS, PAGE 2

SECTION II: . . . . . . . . . . . .  TRANSACTION TERMS AND COST ALLOCATION/BREAKDOWN, PAGE 3

SECTION III, IV, V
AND VI: . . . . . . . . . . . .  THIRD PARTY SETTLEMENT SERVICE PROVIDER NAME(S); PAYEES, FEES PAID AT CLOSING BY
                                 LENDER; FEES PAID OUTSIDE OF CLOSING, PAGE 4

SECTION VII: . . . . . . . . . . . .  WORLD LOAN DOCUMENTS, PAGE 5

SECTION VIII . . . . . . . . . . . .  DOCUMENTS PREPARED OR FORWARDED BY CLOSING AGENT, PAGE 6

SECTION IX . . . . . . . . . . . .  TITLE INSURANCE, PAGE 7

SECTION X AND XI . . . . . . . . .  TAXES/HAZARD/FIRE/FLOOD INSURANCE; STATE SPECIFIC REQUIREMENTS, PAGE 8

SECTION XI AND XII . . . . . . . .  STATE SPECIFIC REQUIREMENTS CONTINUED; ADDITIONAL REQUIREMENTS, PAGE 9

SECTION XIII . . . . . . . . . . .  SPECIAL INSTRUCTIONS, PAGE 10

SECTION XIV . . . . . . . . . . . . .  FUNDING INSTRUCTIONS, LAST PAGE

| PLEASE TAKE A MOMENT TO REVIEW OUR CLOSING INSTRUCTIONS. |
|---|

### QUESTIONS

For questions concerning:

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS | LOAN NO: 0021900923 |
|---|---|---|

**SECTION II - TRANSACTION TERMS AND COST ALLOCATION - See Section VI for Fees Outside of Closing (POC)**

**TERMS OF TRANSACTION:**

| | | | | | |
|---|---|---|---|---|---|
| Sales Price | $ | 386,000.00 | Mortgage Broker Fee - (Broker to submit demand to closer) | $ | |
| Amount of this Loan | $ | 286,000.00 | Provide Copy of Downpayment Funds to Close: | $ | 100,000.00 |

**ADDITIONAL FINANCING:**

| | | | |
|---|---|---|---|
| Amount | $ | Interest Rate | .000 |
| Monthly Payment | $ | Term (Years) | |

**DISBURSAL INFORMATION**

| | | | FIRST PAYMENT DUE DATE: |
|---|---|---|---|
| World Loan Amount | $ | 286,000.00 | 01/01/04 |

| WE WILL DEDUCT THE FOLLOWING * | PAID BY BORROWER | PAID BY SELLER |
|---|---|---|
| World's Loan Fee | $ | $  ** |
| World's Discount Fee | $ | $  ** |
| Saleable Loan Discount Fee | $ | $  ** |
| Mortgage Broker Fee | | |
| ( % + $ 350.00) | $ 350.00 | $ .00  ** |
| Total Broker Check $ .00 | Broker Fee Paid by Lender | $ 5,720.00 |

Interest from date of **WIRE** to 12/01/03
at 42.78 per day .................. $ **TO BE DETERMINED** ****

**Escrow Account Breakdown**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| County Tax | 4 Pymt @ | 402.08 | $ 1,608.32 | Flood Ins. | Pymt @ | $ | |
| City Tax | Pymt @ | | $ | Hazard Ins. | 1 Pymt @ | 95.33 | $ 95.33 |
| School Tax | Pymt @ | | $ | Mortgage Ins. | Pymt @ | $ | |
| Water Tax | Pymt @ | | $ | | | | |
| Sp. Dist. Tax | Pymt @ | | $ | | | | |
| Bond | Pymt @ | | $ | Less Aggregate Accounting Adjustment | $ ( | 783.39 ) | |

| | | |
|---|---|---|
| Escrow Deposit Net Funded at Close per RESPA Regulations | $ | 920.26 |
| Application Fee | $ | |
| Appraisal/Property Evaluation Fee | $ | 325.00 |
| Buydown Fee | $ | |
| Third Party Buydown Fee | $ | |
| Commitment Fee | $ | |
| Credit Review Fee | $ | |
| Document Preparation Fee | $ | 50.00 |
| Equity Builder Servicing Fee | $ | |
| Flood Zone Initial Determination Fee | $ | *** |
| Flood Zone Ongoing Monitoring Fee | $ | 9.00 *** |
| Funding Fee | $ | 50.00 |
| Holdback | $ | |
| Loan Origination Fee | $ | |
| Mortgage Credit Certificate (MCC) Fee | $ | |
| Mortgage Insurance Premium | $ | |
| Payoff World Loan Number | $ | |
| Processing Fee | $ | |
| Redraw Fee | $ | |
| Tax Service Fee | $ | 68.00 *** |
| Trust Review Fee | $ | |
| Loan Sales Processing Fee | $ | |
| Property Inspection Waiver Fee | $ | *** |
| **CLOSING COSTS PAID BY WORLD (added to Funds to Closing Agent)** | | |
| Notary Fee | $ | |
| Courier Fee | $ | |
| Recording Fee | $ | |
| Title Insurance | $ | |
| Closing/Settlement Fee | $ | |
| Mortgage Tax Paid By Lender | $ | |
| **TOTAL FUNDS TO CLOSING AGENT** | $ | **TO BE DETERMINED** |
| | | |
| AHP Assistance Total | $ | |
| **FUNDS FOR CLOSING AGENT DISBURSAL** | | |
| Funds to be disbursed to Broker | $ | 6,070.00 *** |
| Mortgage Insurance Premium | $ | *** |
| Funds Payable to **PAYEE #:** (1) | $ | *** |
| Funds Payable to (2) | $ | *** |
| Funds Payable to (3) | $ | *** |
| **WIRE AMOUNT** | $ | **TO BE DETERMINED** |

* Deduction of the fees listed is pursuant to our agreement to finance these loan costs. Borrower is not to pay these amounts out of his/her own cash.

** If Seller paid fees <u>EXCEED</u> what is shown on these instructions, as closing agent you are required to contact 1-800-873-7340, for approval.

*** See Page 4 for Third Party Settlement Service Provider Names, if applicable.

**** NOTE: The HUD-1 or HUD-1A Settlement Statement or Summary of Closing Fees must reflect the actual disbursal/funding date. (1), (2), (3) See Page 4 for Payees.

GF440C1 (09.16.03/6-03)  R40C

DISTRIBUTION:     1 COPY-CLOSER     1 COPY-LOAN CENTER     1 COPY-LOAN FILE

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS | LOAN NO.  0021900923 |
|---|---|---|

## SECTION III - THIRD PARTY SETTLEMENT SERVICE PROVIDER NAME(S)

To assist you with preparation of the HUD-1 or HUD-1A Settlement Statement, listed below are the names and addresses of the firms receiving the payments shown, if applicable.

| SETTLEMENT SERVICE | SETTLEMENT PROVIDER |
|---|---|
| • Appraisal/Property Inspection Waiver Fee: | WORLD SAVINGS BANK |
| • Mortgage Broker Fee: | MORTGAGENET.WORK<br>1059 TIERRA DEL REY, #J<br>CHULA VISTA, CA  91910 |
| • Mortgage Insurance Premium: | |
| • NHSA Affiliate Fee: | Neighborhood Housing Services of America Affiliated Organization |
| • Tax Service Fee: | Transamerica Real Estate Information Companies |
| • Initial Flood Determination Fee/<br>Ongoing Flood Zone Monitoring  Fee: | Transamerica Flood Hazard Cerfitication |

## SECTION IV - PAYEE(S) - The following names and addresses are provided to assist you with (a) disbursal of loan proceeds and (b) preparation of the HUD-1 or HUD-1A Settlement Statement.

PAYEE(S) NAME AND ADDRESS(ES)

1.

2.

3.

## SECTION V - FEES PAID AT CLOSING BY LENDER

| | | | | |
|---|---|---|---|---|
| Recording | $ | Notary | $ | |
| Closing/Settlement | $ | Title Insurance | $ | .00 |
| Courier | $ | Processing | $ | |
| Application | $ | Appraisal | $ | |
| | | Mortgage/Intangible  property/ | | |
| | | Recording tax | $ | |

## SECTION VI - FEES PAID OUTSIDE OF CLOSING

The following fees were paid outside of closing. Please reflect the fees on the HUD-1 or HUD-1A Settlement.
DO NOT COLLECT THESE FEES AT CLOSING.

| FEES PAID OUTSIDE OF CLOSING (POC) BY BORROWER:<br>(These are not credits) | | FEES PAID OUTSIDE OF CLOSING BY LENDER: | |
|---|---|---|---|
| Application | $ | | |
| Appraisal | $ | Credit Report | $  7.30 |
| Trust Review | $ | Loan Submission | $  .00 |
| Take-Out Commitment | $ | Electronic Facility | $ |
| Initial Flood Zone | | Mortgage Broker | $  5,720.00 |
| Determination | $  4.00 | Cash Refund to Borrower | $ |
| Mortgage Broker | $ | Tax Service | $ |
| NHSA Affiliate | $ | Initial Flood Zone Determination | $ |
| Processing | $  306.00 | Ongoing Flood Zone Determination | $ |
| Mortgage Credit Certif. (MCC) | $ | Real Estate Agent Services | $ |
| Rate Lock-In | $ | Property Inspection Waiver Fee | $ |

COMPLETE THE HUD-1 OR HUD-1A SETTLEMENT STATEMENT, WHICHEVER IS APPLICABLE, AT THE
TIME OF CLOSING AND FORWARD A CERTIFIED COPY WITH THE CLOSING PACKAGE, WITHIN 24
HOURS AFTER SETTLEMENT TO:          World Savings
                                          Attn.: Imaging Department
                    4101 Wiseman Boulevard, Bldg. 108, San Antonio, Texas 78251

NOTE:  The HUD-1 or HUD-1A Settlement Statement must reflect the actual disbursal/funding date.

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS | LOAN NO.    0021900923 |
|---|---|---|
| | SECTION  VII - WORLD LOAN DOCUMENTS | |

You are instructed to have the following documents properly executed and notarized (as required). Documents to be recorded must be submitted for recording immediately upon settlement. See Page 2 for instructions for returning documents.

**RECORD THE DOCUMENTS BELOW (NOTARY REQUIRED)**

( X )  Security Instrument dated   11/07/03
         for $ 286 ,000.00.
( X )  Exhibit "A" Legal Description to security instrument
         (see instructions for preparing Exhibit "A" on Page 6
         of these instructions)
(    )  Security Instrument securing the Downpayment
         Assistance Repayment Agreement dated
         for $
(    )  Exhibit "A" Legal Description to security instrument
         securing the Downpayment  Assistance Repayment
         Agreement (see instructions for preparing Exhibit "A"
         on Page 6  of these instructions)

**RIDERS TO THE SECURITY INSTRUMENT**

A.  RIDERS WITH A RECORDING REQUEST MUST BE
     RECORDED SEPARATELY.

B.  RIDERS WITHOUT A RECORDING REQUEST MUST
     BE ATTACHED TO THE SECURITY INSTRUMENT
     AND RECORDED TOGETHER.

(    )  Rider-Borrower's Warranty of Financing Terms (QQ)
(    )  Rider-Fixed Rate
(    )  Rider-Fixed/Adjustable Rate
(    )  Rider-1-4 Family Rider, Assignment of Rents
(    )  Rider-Planned Unit Development
( .  )  Rider-Adjustable Rate
(    )  Rider-Additional Collateral Pledged
(    )  Rider-Fixed Rate Option Feature
(    )  Rider-Condominium
(    )  Rider-Demand Provision
( .  )  Rider-Cross Collateralization and Default
(    )  Request for Notice of Sale (AZ)
(    )  Request for Notices of Default and Sale
(    )  Homestead Waiver Exemption (CO)
( .  )  Waiver of Borrower's Rights/Closing Attorney
         Affidavit/Foreclosure Disclosure (GA)
(    )  Transfer of Lien (TX)
( .  )  Voluntary Designation of Homestead and Exhibit "A"
         with legal description (TX  Equity )
(    )  Request for Notice of Default and Notice of Delinquency
(    )

**OTHER DOCUMENTS**

(    )  Texas Home Equity Affidavit  and Agreement

**DELIVER TO BORROWER - DO NOT RETURN OR RECORD**

(    )  IRS W-4 Employee Withholding Allowance
         Certificate, Adjustment Notice (MCC)
(    )  Valuation Disclosure (WA)
( X )  Itemization of the Amount Financed

**DO NOT RECORD (RETURN SIGNED)**

( X )  Promissory Note
(    )  Account Opening Advance Request
(    )  ELOC Agreement and Disclosure Statement
( .  )  Modification to Note
( X )  Regulation Z Disclosure
( X )  Loan Program Disclosure
(    )  Document Correction Agreement
(    )  Holdback Agreement
( .  )  Buydown Agreement
( X )  Notice of Fire/Hazard Insurance Requirements
(    )  Notice of Right to Cancel (each consumer with an
         ownership interest in the property must acknowledge
         receipt and be given a copy to keep)
( X )  Property Tax Payment Confirmation
(    )  Borrower's Property Tax Agreement
(    )  Tax Bill Authorization Letter
( X )  Acknowledgement Letter
( X )  Prepay Feature Acknowledgement Letter
(    )  Notice of Special Flood Hazard Insurance
( X )  Loan Application Addendum - Second Request
         for Information
(    )  Lender's Release and Indemnity Agreement
         (MCC Program)
(    )  Personal Guaranty (include mailing address of
         first signer)
(    )  Notification of Rate Lock-in Period and Estimated
         Processing Time (VA)
( X )  Property Tax Payment Agreement (CA)
(    )  Employee Benefit Disclosure
( X )  Initial Escrow Account Statement
( X )  Referral Notice(s), (WSIA)
( X )  Mortgage Servicing Transfer Disclosure (each
         borrower must sign)
(    )  Security Agreement and Security Assignment Under
         Land Trust (Assignment of Beneficial Interest) (IL)
(    )  Addendum to Note and Security Agreement and
         Security Assignment Under Land Trust (Assignment
         of Beneficial Interest) (Exculpatory Rider) (IL)
(    )  Disclosure Regarding Availability of Interim Financing,
         Legal Representation and Appraisal (CT)
( X )  Verification of Personal Information
(    )  Closing Agent Transmittal (MA)
(    )  Equity Builder - EFT Authorization
( ).  Mortgage Insurance Notice
(    )  ACORN Closing Certificate
(    )  Acknowledgement of Value-Notarized (TX)
(    )  Receipt of Closing Documents (TX)
(    )  Notice of Non-Owning Spouse's Right to Cancel (TX)
(    )  Texas Equity Special Closing Instructions (TX)
( .  )  Equity Line of Credit-Final Confirmation of Closing Fees
         paid by World Savings
(    )  Attorney/Insurance Preference Form (SC) (each borrower
         must sign)
(    )  Downpayment and/or Closing Cost Assistance
         Repayment Agreement (all states except TX)
(    )  Downpayment Assistance Repayment Agreement (TX)
(    )  Texas Equity Loan Application Addendum
( X )  REQUEST FOR INITIAL PAYMENT AMOUNT
         PICK-A-PAYMENT LOAN

**SEE NEXT PAGE FOR ADDITIONAL DOCUMENTS**

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS |
|---|---|

**SECTION VIII -        DOCUMENTS PREPARED OR FORWARDED BY CLOSING AGENT**
PREPARE AND/OR ENSURE EXECUTION OF THE FOLLOWING DOCUMENTS. RETURN WITH CLOSING PACKAGE TO WORLD.
If there are any changes in the terms on this page, call 1-800-873-7340   to request verbal approval.
                                                                                                          **0021900923**

( ) Certified copies of Buyer's Affidavit of Title and Seller's Affidavit of Title (NJ).
( ) Certified copies of Affidavit to insure against mechanic's/materialmen's lien(s).
( ) Special Closing Instructions for Land Trusts (IL).
( ) Lead Paint form(s) - Notification and Indemnification, if applicable (MA).
( ) Smoke Detector form(s) - Certification and Indemnification (MA).
( ) Septic System form(s) - Certification and Indemnification, if applicable (for properties with septic systems) (MA).
( ) 6D Certificate (for condominium loans in MA).
( ) Homestead Designation Affidavit (TX)
( X ) For QQ loans, provide evidence of the source of funds for the downpayment and closing costs.
( ) You may record a concurrent security instrument, securing a note, in the amount of $                          as
     subordinate junior lien to our first lien.  Please forward a certified copy of the note and security instrument.
( ) You must record a Subordination Agreement in the amount of $                          subordinating  a prior recorded lien
     to our Security Instrument. (You are insuring our first lien position.) Please forward a certified copy of the Subordination
     Agreement.

( ) Forward a certified copy of the QUIT CLAIM DEED from:


( X ) Forward a certified copy of the GRANT/WARRANTY DEED/BARGAIN AND SALE DEED.
     NOTE:  If the vesting on the Grant/Warranty Deed/Bargain and Sale Deed differs from our Security Instrument,
            you must call 1-800-873-7340 IMMEDIATELY.

( ) Complete all blank sections of the Request for Notice of Default and Notice of Delinquency and have it signed by the borrowers.
     Attach the legal description to the Notice and send it to be recorded.  Forward a CERTIFIED copy of the Notice sent for recording to
     the address shown on Page 2 of these instructions.

---

**FOR ALL STATES EXCEPT WASHINGTON**

( X ) Preparing Exhibit "A" - Detach the legal description from your Preliminary Title Report/Commitment to Insure
     dated  09/19/03                     . Using clear tape, attach the legal description to the Exhibit "A" page and photocopy.
     Attach the photocopy of the legal description to our Security Instrument and submit for recording.
     Return a certified copy of the Security Instrument including the legal description in the closing package.

**FOR TEXAS EQUITY LOANS ONLY**

( ) Attach a photocopy of the legal description to the Voluntary Designation of Homestead and submit for recording.
     Return a certified copy of the Voluntary Designation of Homestead including the legal description in the closing package.

---

**FOR WASHINGTON STATE ONLY**

( ) Washington State County Auditor/Recorder's Indexing Form (Cover Sheet) - Detach the abbreviated legal description from
     your Preliminary Title Report/Commitment to Insure dated      - - - - - - - -                 . Using clear tape, attach the
     abbreviated legal description to the Cover Sheet and photocopy. Attach the photocopy of the Cover Sheet to the Deed of trust
     prior to recording.

( ) Preparing Exhibit "A" - Detach the legal description from your Preliminary Title Report/Commitment to Insure
     dated      - - - - - - - -          . Using clear tape, attach the legal description to the Exhibit "A" page and photocopy.
     Attach the photocopy of the legal description to our Security Instrument and submit for recording.

     Return a certified copy of the Security Instrument including the legal description in the closing package.

---

**SEE NEXT PAGE FOR "TITLE INSURANCE" REQUIREMENTS**

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS |
|---|---|
| | SECTION IX - TITLE INSURANCE        0021900923 |

THE NAMES SHOWN ON THE ENCLOSED SECURITY INSTRUMENT MUST BE EXACTLY AS TITLE TO THE PROPERTY IS HELD. IF THE NAMES ON THE SECURITY INSTRUMENT DIFFER FROM THE NAMES ON TITLE, PLEASE CALL 1-800-873-7340.

YOU MUST SEND THE TITLE POLICY OR TITLE PRODUCT CHECKED BELOW TO THE ADDRESS INDICATED ON THE SECOND PAGE OF THESE INSTRUCTIONS WITHIN THE TIME FRAME REQUIRED.

( X )  WORLD SAVINGS WILL ACCEPT AN ORIGINAL ALTA SHORT FORM LENDER'S TITLE POLICY. THE ORIGINAL SHORT FORM TITLE POLICY MUST REFERENCE OUR LOAN NUMBER AND BE RETURNED TO US WITH THE EXECUTED CLOSING PACKAGE WITHIN 24 HOURS AFTER SETTLEMENT.

( X )  In the event a Short Form Title Policy is not available, World Savings will accept an original Long Form Lender's Title Policy. The original Long Form Title Policy must reference our Loan Number and be received by us within 30 business days after settlement.

( X )  WORLD SAVINGS WILL ACCEPT A CREDITORS' RIGHTS EXCEPTION ONLY IF IT IS IN THE FORM OF THE 1992 REVISION TO THE ALTA POLICY OF TITLE INSURANCE.

(   ·)  Collect for Survey/Improvement Location Certificate and remit to survey company, if applicable.

(    )  Provide survey, certified copy of survey, or existing survey affidavit, whichever is applicable/required.

( X )  The Title Policy must include the following Endorsements:  100 , 8.1 , 111.8 , 115.2

( X )  The Title Policy may only include the following Exceptions identified in your Preliminary Title Report/Commitment to Insure dated: 09/19/03 .
        1-7

---

**EQUITY LINES OF CREDIT LOANS ONLY**

(    )  WORLD SAVINGS REQUIRES THE FOLLOWING TYPE OF TITLE PRODUCT WHICH MUST BE PROVIDED TO US NO LATER THAN 30 DAYS AFTER SETTLEMENT:

---

( X )  The Security Instrument in the amount of $        286,000.00   is to be recorded in    FIRST        lien position This must be reflected on the Title Policy or Title Product checked above, if any.

( X )  Issue the Lender's Title Insurance Policy or Title Product, as checked above, in the amount of $        286,000.00       to World Savings, its successors and/or assignees.

( X )  No secondary financing is permitted. Notify World prior to closing, if there is a concurrent closing of another loan, or any transfer of title to the same property.

**FOR LOANS CLOSING CONCURRENTLY WITH ANOTHER WORLD LOAN**

(    )  Refer to the Closing Instructions for the World concurrent loan number                          for additional title coverage instructions.

SPACE INTENTIONALLY LEFT BLANK.

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS |
|---|---|

| SECTION X - TAXES/HAZARD/FIRE/FLOOD /INSURANCE | 0021900923 |
|---|---|

( X )  TAXES AND ALL ASSESSMENTS (including Homeowner's Association Assessments) MUST BE PAID CURRENT.

(   )  Complete and return the Property Tax Payment Confirmation form with the HUD-1 or HUD-1A Settlement Statement if taxes are paid at closing.

( X )  Please review the attached "Closing Agent Notification of Fire/Hazard Insurance Requirements" form, which is incorporated herein by reference. Ensure that all requirements are met prior to loan settlement including, but not limited to, the policy amount and standard mortgagee clause.

( X )  As closing agent you are responsible for ensuring that the borrower brings acceptable proof of insurance and evidence of payment as outlined in Item #7 of the "Closing Agent Notification of Fire/Hazard Insurance Requirements" form. You must deliver this proof of insurance and evidence of payment to World Savings within 24 hours of loan settlement along with the <u>executed documents</u>.

(   )  This loan requires flood insurance. Please review the attached "Closing Agent Notification of Flood Insurance Requirements" form to ensure that all requirements are met prior to loan settlement. Borrower must bring to closing a copy of the application for the flood policy and a receipt for the first year's premium.

| SECTION XI - STATE SPECIFIC REQUIREMENTS |
|---|

## ITEMS MARKED WITH AN "X" ARE REQUIREMENTS FOR YOUR STATE.

**FOR LOANS IN ALL STATES**
( X )  You are authorized to record our documents and disburse funds only when you have complied with all of our instructions and there are <u>no</u> unauthorized alterations.

**FOR RIDERS ATTACHED TO THE SECURITY INSTRUMENT FOR RECORDING**
( X )  FOR ALL STATES EXCEPT PA, you are instructed to ensure that all riders included in the closing package are (1) executed, (2) attached to our Security Instrument and (3) submitted for recording.

**FOR ALL ARIZONA TITLE PRODUCTS ONLY**
(   )  Even if the name(s) of the borrower(s) in this transaction has/have not been searched in the public records the title insurer must issue a policy/product that insures that our lien is superior to matters such as proceedings, liens, or decrees against buyer(s) that do not specifically describe the property securing our loan, but may affect the title or impose liens or encumbrances thereon.

**FOR CONNECTICUT LOANS ONLY**
(   )  Please deliver to the Mortgage Broker for this transaction, whose name and address appears on these Closing Instructions, signed copies of the Federal Truth in Lending Disclosure, Notice of Right to Cancel (if applicable), Initial Escrow Account Statement (if applicable), Promissory Note, Mortgage, and HUD-1 or HUD-1A Settlement Statement [CONN GEN STAT § 36A-493]

**FOR GEORGIA LOANS ONLY**
(   )  You must ensure that "Total Broker Fees Paid" and other points and fees as defined in the Georgia Fair Lending Act cannot exceed 4.99% of the loan amount. Do not close this loan if (1) there are any additional broker fees that are not on World's Georgia Preferred Mortgage Broker Demand Statement or, (2) total points and fees exceed 4.99%.

**FOR IOWA LOANS ONLY**
(   )  Obtain the signatures of all Borrowers and their spouses, if any (regardless of whether or not such spouse is also a Borrower), on the Waiver of Homestead Rights section of the Security Instrument.

**FOR MARYLAND LOANS ONLY**
(   )  Do not add Refinance Transfer Information language directly onto our Deed of Trust. When applicable, prepare an <u>Affidavit of Refinance</u>, attach to our Deed of Trust and submit to the county recorder's office for recording.

**FOR NEW YORK LOANS ONLY**
(   )  Prior to recording, complete section 25. "Borrower's Statement Regarding the Property" of the Security Instrument for fixed rate loans.

**FOR PENNSYLVANIA LOANS ONLY**
(   )  You are instructed to ensure that (a) all riders included in the closing package are recorded as separate documents and (b) all pages of the documents sent for recording are arranged in numerical order. DO NOT ATTACH THE RIDERS TO OUR SECURITY INSTRUMENTS.

**FOR TENNESSEE LOANS ONLY**
(   )  Complete the Borrower's source of interest paragraph appearing on our Security Instrument, prior to recording. The Borrower's source of interest paragraph appears on Page 1 of our Security Instrument for closed second and second loans and Page 3 of our Security Instrument for fixed rate loans.

### SEE NEXT PAGE FOR "ADDITIONAL STATE SPECIFIC REQUIREMENTS"

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS |
|---|---|

| SECTION XI - STATE SPECIFIC REQUIREMENTS - CONTINUED |
|---|

**ITEMS MARKED WITH AN "X" ARE REQUIREMENTS FOR YOUR STATE.**                    0021900923

**FOR TEXAS LOANS ONLY**

(    ) Please issue Express Insurance, if, after review of the property survey, your title policy will include any exception(s) in Schedule B for encroachments, lot violations, etc.

(    ) Please issue Deletion of Arbitration Provision as part of the final title policy. Do not sign, record or return this provision as an individual document.

(    ) If the Property is Non-Owner Occupied, prepare and have signed and notarized, a Homestead Designation Affidavit verifying non-homestead of the Property. If borrower is married, obtain spouse's signature as well. Record affidavit and return recorded copy to World Savings.

(    ) If the Property is the borrower's homestead and this is NOT a Texas Equity loan, any proceeds from the loan not used for the refinance must be returned to World Savings and will be applied to the borrower's principal balance.

(    ) If this is a Texas Equity loan, refer to Special Closing Instructions for Texas Equity loans for additional instructions. If you did not receive these instructions, contact us immediately.

(    ) If this is a Texas Equity Loan, you must (a) fill in the name of the current record title holder on the **Voluntary Designation of Homestead** form prior to the signing and recording, (b) ensure that the Designation is properly signed and notarized (if borrower is married, you must obtain the spouse's signature as well), and (c) record the Designation and return the recorded copy to World Savings.

(    ) Prior to recording, please complete the Renewal and Extension section of the Security Instrument, or the Renewal and Extension page marked Exhibit "B", whichever is applicable.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**SECTION XII - ADDITIONAL REQUIREMENTS**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**( X )    SPECIAL POWER OF ATTORNEY**

If the borrower is granting power of attorney to a person who will act as attorney-in-fact and sign the loan documents, we require a certified copy of the valid Special Power of Attorney which specifically references: (1) the name of the person who will act as attorney-in-fact; (2) the property which is the subject of the loan transaction; (3) the transaction must be identified as a purchase or a refinance*; and (4) the date the Special Power of Attorney was granted, which must be within the previous six months. Variations in the requirements set forth in items 1 through 4, in a Special Power of Attorney, are acceptable only when necessary to comply with state law. **Note: World will not accept a power of attorney for a trustee of a trust.**

You are instructed to type or legibly print the "Special Power of Attorney" designation on the signature page of the security documents.

* For Texas Equity loans, the Special Power of Attorney must specifically authorize a loan under Section 50(a)(6), Article XVI of the Texas Constitution

**( . )    DO NOT DISBURSE ANY FUNDS PRIOR TO THE EXPIRATION OF THE CANCELLATION PERIOD DESCRIBED IN THE ENCLOSED "NOTICE OF RIGHT TO CANCEL."**

**( X )    HUD EARLY CLOSING BONUS CHECKS**

When applicable, forward lender's "Early Closing Bonus" check from HUD to World Savings with the closing documents.

| PAYOFF OF EXISTING WORLD LOANS |
|---|
| (    )    Payoff loan number                                      will be by separate payoff demand at closing/escrow. |
| (    )    For questions regarding Payoffs please call:  1-800-642-0257   or  Fax 210-509-1121. |

**PREPAID INTEREST CALCULATION (NOT APPLICABLE TO ELOC)**

World calculates prepaid interest from either (a) the date the funds are wired to you, or (b) the scheduled loan settlement (disbursement) date if funds are provided to you by check. If the actual settlement date shown on the certified settlement statement is later than the scheduled settlement date, World may owe the borrower a refund. At World's discretion, any prepaid interest may either be credited to the principal balance of the borrower's loan or refunded directly to the borrower by check. World will not send a refund check to any party other than the borrower. Please close this loan based on the figures shown on page 3 of this document.

**SEE NEXT PAGE FOR "SPECIAL INSTRUCTIONS"**

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS |
|---|---|

| SECTION XIII - SPECIAL INSTRUCTIONS | 0021900923 |
|---|---|

**SPECIAL INSTRUCTIONS:**

( X )  In compliance with Subsection §6045 of the Internal Revenue Code and as the person responsible for closing this real estate transaction, you will file as the Reporting Person an information return with the Internal Revenue.

**NON-OWNING/NON-BORROWING SPOUSE SIGNATURE REQUIREMENTS**
(    )  If the Borrower(s) is married and taking title individually, ensure that the non-owning/non-borrowing spouse(s) signs either the regular signature page of the Security Instrument or the special BORROWER(S)' SPOUSE(S)' signature page if provided.

X  PAYOFF COLLECTIONS AT COE, COLLECTION $1523, PARK DANSAN $1128,
   CBA $55
X  SIGNED PICK-A-PAY DISCLOSURE
X  BORROWER TO COMPLETE LOAN APPLICATION ADDENDUM PG3 INCLUDING
   SOCIAL SECURITY NUMBER/TAXPAYER ID NUMBER AND RETURN WITH CLOSING
   PACKAGE.
X  CERTIFIED COPY OF ESCROW AMENDMENT REGARDING LENDER,RATE ,TERM
   AND LEGAL NAME TO BE RETURNED WITH CLOSING PACKAGE.
X  ATTENTION CLOSING AGENT-REFER TO PG. 2 , ITEM #3 - PATRIOT ACT.


        *****    SPACE  INTENTIONALLY  LEFT  BLANK     *****

| **WORLD SAVINGS** | LENDER'S CLOSING INSTRUCTIONS | LOAN NO. 0021900923 |
|---|---|---|
| | SECTION XIV – WIRE FUNDING INSTRUCTIONS | |
| ATTENTION CLOSING AGENT: | | **WIRE FUNDING INSTRUCTIONS** |

## CALL 1-800-873-7340
### TO OBTAIN FINAL FUNDING FIGURES AND FUNDS TO CLOSE

**WIRE TIMING REQUIREMENTS**

You may request funds only when you are in a position to immediately disburse the funds upon receipt in accordance with these Lender's Closing Instructions. All funding transactions must be complete prior to 4:00 p.m. Central Time on a business day for funds to be wired the same day. Funds will not be wired after 4:00 p.m. Central Time. Note: Saturdays, Sundays and holidays are not considered "business days". For rescindable transactions, the funds will be wired on the first business day AFTER the expiration of the rescission period.

**Information Required to Obtain Funds by Wire**

Note: The information requested in this section will be required when calling the Automated Funding System. It is recommended that you use this sheet to complete the transaction.

First Loan Number:    0021900923                      World Concurrent Loan Number:    N/A

Borrower(s) Name:    TOMMY GARNER, ROMELYN GARNER

Title/Escrow Name:    CALIFORNIA TITLE COMPANY          Title/Escrow Number:    100777-ER

**DOCUMENT CONTROL NUMBER:    1202**

   a)  Bank/ABA Number: _____

   b)  Deposit Account Number: _____

   c)  Document Signing Date: _____
       (Rescindable Transactions only)

   d)  Disbursal Date: _____

**Information Received from the Automated Funding System**

   a)  Wire Date: _____

   b)  Amount of Wire:    $ _____

   c)  Prepaid Interest: _____ Days @ $ _____ Per Day = $ _____ Total

   d)  Confirmation Number: _____

**FOR RESCINDABLE TRANSACTIONS ONLY:**

Do not disburse funds if you receive a signed statement indicating that anyone with a right to rescind wishes to cancel this transaction. In such an event, you MUST IMMEDIATELY (a) notify World by faxing the signed and dated rescission statement to 1-210-509-1293, and (b) return the funds by wire to World.

**Returning Wired Funds**

If for any reason you have not disbursed the wired funds to, or on behalf of, the borrower within 24 hours of your receipt of such funds from World Savings, you MUST IMMEDIATELY return the funds by wire.

The following information must be included with the return of funds by wire:

Due to ABA: ....................... 1221-8707-6

Bank Name: ....................... World Savings Bank, FSB

Credit To: ....................... Final Documentation

Account Number: ............... 11052016

Benefit Of: ....................... World Loan #

**CERTIFICATION**

By requesting funds, I certify that (a) I have accepted these Lender's Closing Instructions, and (b) that all requirements as outlined in World's Lender's Closing Instructions will be met prior to settlement.

BY:

_____          _____
Closing Agent signature                            Telephone number (including area code and extension)

_____          _____
Print-Closing Agent's name                        Print-Closing Agent's title

| For Internal Use Only |
|---|
| P____ V____ F____ |

GF440M1 (09.15.03/6-03) R400                    LAST PAGE                    CA

DISTRIBUTION:  1 COPY-CLOSER  1 COPY-LOAN CENTER  1 COPY-LOAN FILE

*224*

LENDER'S USE ONLY

| WORLD SAVINGS | LENDER'S CLOSING INSTRUCTIONS |
|---|---|

DATE:   NOVEMBER 07, 2003
GF/ORDER/FILE NUMBER:   100777-ER
BORROWER(S):   TOMMY GARNER
          ROMELYN GARNER

LOAN NUMBER:   0021900923
CONCURRENT LOAN NUMBER:   N/A

## SECTION I - GENERAL INSTRUCTIONS

**YOU MUST COMPLY WITH ALL INSTRUCTIONS AND CONDITIONS IN THESE CLOSING INSTRUCTIONS BEFORE YOU CLOSE AND FUND THIS LOAN.**

1. **AUTHORIZED CLOSING AGENT**

   World Savings ("we") requires that an independent third party, called a "closing agent ("you")," coordinate the settlement of every real estate loan we make. Depending on local custom, a closing agent may be an escrow company, a title insurance company or an attorney. A borrower, a mortgagor or a real estate broker or any other person who is a party to the transaction may not act as the closing agent. You represent and warrant that you are not a party to the transaction. You further represent and warrant that you are an escrow company, a title insurance company or an attorney, duly licensed and legally authorized to perform the services required by these instructions.

2. **AGREEMENT TO ADHERE TO CLOSING INSTRUCTIONS**

   By closing the above referenced loan, you represent and warrant that you have followed each of the requirements and instructions set forth in these Lender's Closing Instructions.

3. **IMPORTANT NOTICE - Compliance with the USA Patriot Act, Section 326**

   **U.S. CITIZEN BORROWERS**

   You are instructed to photocopy the borrower(s)' authentic state issued driver's license or other state issued photo identification used to verify the borrower(s)' identity and to forward the photocopy to World Savings with the closing package.

   **NON-U.S. CITIZEN BORROWERS**

   You are instructed to photocopy the borrower(s) passport or similar foreign government issued picture identification (U.S. state issued driver's license is NOT sufficient) after verifying authenticity of the document and the borrower(s)' identity and forward a legible copy to World Savings with the closing package.

   The copy must show at least the number of the passport or other document and the picture of the borrower.

4. **SIGNATURE REQUIREMENTS**

   You warrant the authenticity of the signatures of each party executing each document and the authority of each representative executing any document on behalf of another, except to the extent such signatures are warranted by a United States National Bank. DO NOT MAIL out or otherwise release documents from your office for signature without our prior approval. All original documents must be signed and dated where applicable.

   For Equity Lines of Credit that are not closing concurrently with another World loan: If you were authorized in writing by World to use a signing agent to obtain signatures from the executing parties, you will verify the signing agent's compliance with each of our instructions given in the "Documents To Be Signed At Closing" form.

5. **NOTARY/WITNESS REQUIREMENTS**

   Our Security Instrument requires acknowledgement/notarization. Prepare and attach notarial acknowledgement(s) with current notarial stamp as required by state law. If state statute so requires, please have each borrower's signature witnessed.

6. **ALTERATIONS/ERASURES ON DOCUMENTS**

   Alterations or Erasures are not permitted on any document without prior written approval from our Final Documentation department. Any approved alterations or attachments must be initialed by the parties concerned.

7. **MORTGAGE BROKER DISBURSALS/THIRD PARTY FEE DISBURSALS**

   YOU ARE INSTRUCTED TO PAY ONLY THE MORTGAGE BROKER FUNDS AND THIRD PARTY FEES IDENTIFIED ON PAGE 4 OF THESE INSTRUCTIONS, AND ONLY AT THE TIME OF THE FINAL DISBURSAL OF THE LOAN FUNDS.

   BROKER FUNDS AND OTHER THIRD PARTY FUNDS ARE INCLUDED IN YOUR TOTAL WIRE DISBURSEMENT.

8. **\*\*\*\*  DOCUMENT EXPIRATION DATE  \*\*\*\***

   The loan documents are VOID and must be returned to World Savings for cancellation within 24 hours if the documents are not executed and you have not disbursed the loan funds by:   12/01/03  , THE INTEREST PAID TO DATE , OR   12/22/03  , THE COMMITMENT EXPIRATION DATE, WHICHEVER IS EARLIER .

   Your scheduled closing date may affect time for performance. Please call if you have any questions.

9. **REDRAW REQUIREMENTS**

   To request a redraw: (a) contact your loan origination office, (b) return the voided loan documents and any loan funds to World, as applicable, [NOTE: World will not redraw documents unless we are in receipt of previously issued documents and funds.] and (c) notify the borrower that they may be charged a $100.00 redraw fee per occurrence.

10. **INSTRUCTIONS FOR RETURNING DOCUMENTS**

    Ensure that all original documents are signed and dated as required. Please retain the documents to be recorded. Forward CERTIFIED copies of the documents sent for recording, together with all other original signed documents including the final HUD-1 or HUD-1A Settlement Statement, to: WORLD SAVINGS, ATTN.: IMAGING DEPARTMENT . 4101 WISEMAN BOULEVARD, BLDG. #10B, SAN ANTONIO, TEXAS 78251.   WITHIN 24 HOURS AFTER LOAN DISBURSAL/SETTLEMENT VIA OVERNIGHT COURIER.

    WORLD SAVINGS WILL NOT PAY COURIER FEES.

GF440B (09.16.03/6-03 ) R40B
REV. (10.01.03/7-03)

DISTRIBUTION:    1 COPY-CLOSER    1 COPY-LOAN CENTER    1 COPY-LOAN FILE

CA



17539

**EXHIBIT "B"**

RECORDING REQUESTED BY:
CALIFORNIA TITLE COMPANY
AND WHEN RECORDED, MAIL TO:

TOMMY GARNER
1788 SHERBROOKE ST.
SAN DIEGO, CA 92139

DOC # 2003-1418209

NOV 26, 2003 11:23 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES: 434.60

THIS SPACE FOR RECORDER'S USE ONLY.

# GRANT DEED

2003-1418209

ASSESSOR'S PARCEL NO.: 58944313
TITLE ORDER NO.: 38028258
ESCROW NO.: 100777-ER

The undersigned Grantor(s) declare that the **DOCUMENT TRANSFER TAX IS:**
$ 424.60 County City
XX computed on the full value of the interest of property conveyed, or
___ computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale.
___ OR transfer is EXEMPT from tax for the following reason:

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, ELENA M. DINEROS, (who acquired title as a Married Woman as her sole and separate property) an Unmarried Woman

hereby GRANT(S) to TOMMY GARNER AND ROMELYN GARNER, HUSBAND AND WIFE AS JOINT TENANTS

all that real property situated in the City of SAN DIEGO, County of **SAN DIEGO**, State of CA, described as: LOT 11 OF BAY TERRACES UNIT NO. 5, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 10794, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 15,1983.

Dated October 13, 2003

State of California
County of __SAN DIEGO__ }
On __10/15/03__ , Before me W.LFRED M. ROCAMORA
Personally appeared
__ELENA M. DINEROS__

Personally known to me (or provided to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

*Elena M. Dineros*
ELENA M. DINEROS

WILFRED M. ROCAMORA
Commission # 1300948
Notary Public - California
San Diego County
My Comm. Expires May 7, 2005

WITNESS my hand and official seal

*Wilfred M. Rocamora*
Signature

MAIL TAX STATEMENTS TO:
TOMMY GARNER
1788 SHERBROOKE ST.
SAN DIEGO, CA 92139

(This area for official notary seal)

**RECORDING REQUESTED BY:**
**WORLD SAVINGS BANK**


**WHEN RECORDED MAIL TO:**
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

**LOAN NUMBER: 0044717353**

**NOTE AMOUNT: $465,000.00**

**FOR RECORDER'S USE ONLY**

# DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $581,250.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

**I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**

**(A)    Security Instrument.** This Deed of Trust, which is dated **December 20, 2006,** will be called the "Security Instrument."

**(B)    Borrower.** TOMMY GARNER AND ROMELYN GARNER, HUSBAND AND WIFE  sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C)    Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-3)

DEFERRED INTEREST

Page 1

CA

**LENDER'S USE ONLY**

0 0 3

0044717353

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$465,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **January 15, 2037** ("Maturity Date").

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

II.    **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.    **DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)     The Property which is located at **1788 SHERBROOKE ST, SAN DIEGO, CA 92139-3970**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

0044717353

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

## 1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.   PAYMENTS FOR TAXES AND INSURANCE

### (A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

0044717353

**(B)    Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

0044717353

**3.     APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.     BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien**. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.     BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

0044717353

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.    **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)                                                                    CA

0044717353

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

0044717353

10.    **CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

   **(A)**    **Borrower's Obligations**

   Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

   Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

   **(B)**    **Lender's Rights**

   Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

11.    **OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

   Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

   Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

   Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

12.    **MAXIMUM LOAN CHARGES**

   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

0044717353

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **1788 SHERBROOKE ST, SAN DIEGO, CA 92139-3970.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

0044717353

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

### 18. INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

### 19. CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

### 20. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

### 21. WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

### 22. CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

### 23. MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

### 24. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A) If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)

CA

0044717353

(B)    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.    FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

0044717353

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

    (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

    (ii)    Lender approves the creditworthiness of the transferee in writing;

    (iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

    (iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

    (v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)

CA

0044717353

## 28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (I) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

## 29.   RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

## 30.   STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-3)

CA

0044717353

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

0044717353

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____  (Seal)

TOMMY GARNER

_____  (Seal)

ROMELYN GARNER

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)          [AF1 (2004-03-1)]                    Page 15                              **CA**
                           [B01 (2004-03-1)]



**DOCUMENT SET COVER SHEET**

The Document Set following this Cover Sheet represents the:

# BORROWER'S LOAN DOCUMENT COPIES

The Document Set is for:

  Loan Number:  0026714998

  Borrower(s) Name(s): TOMMY B. GARNER
         ROMELYN B. GARNER


  Property Address:  1788 SHERBROOKE STREET
         SAN DIEGO, CA  82139

| **WORLD SAVINGS** | **ACKNOWLEDGEMENT LETTER** |
|---|---|

Property Address:
**1788 SHERBROOKE STREET
SAN DIEGO, CA 92139**

Loan No.:  0026714998
Date:  03/03/05

**TOMMY GARNER
1788 SHERBROOKE STREET
SAN DIEGO, CA 92139**

Dear Loan Applicant:

Thank you for your home loan application. We sincerely appreciate your business.

At various times during the processing of your loan application, we will provide disclosures and booklets. These are designed to help you fully understand the features and benefits of our overall lending programs and the specific loan you have requested.

Enclosed with this letter are the following items:

- **TRUTH-IN-LENDING STATEMENT** – required by Federal Regulation Z (Truth-In-Lending). This disclosure includes the Annual Percentage Rate (APR), the amount financed and the total of payments.

- **GOOD FAITH ESTIMATE** – required by the Real Estate Settlement Procedure Act (RESPA). This disclosure lists estimated closing costs.

- **SETTLEMENT COSTS: A HOUSING AND URBAN DEVELOPMENT (HUD) GUIDE FOR HOME BUYERS** – required by RESPA. This booklet describes closing procedures and explains how to read the Good Faith Estimate.

You may also have received the following with this letter or in your application package:

- **MORTGAGE SERVICING TRANSFER DISCLOSURE** – required by RESPA. This discloses the likelihood of our transferring the servicing of your loan to another party.

- **LOAN PROGRAM DISCLOSURE(S) FOR THE ADJUSTABLE RATE MORTGAGE LOAN(S) IN WHICH YOU WERE INTERESTED** – required by the Federal Regulation Z (Truth-In-Lending) and Office of Thrift Supervision regulations. This disclosure explains the loan you have requested. (If you have decided on a loan program which is different from the one(s) for which you have already received a disclosure, we will issue a substitute loan program disclosure.)

- **CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES** – required by Office of Thrift Supervision regulations. This booklet describes how adjustable rate mortgage loans work.

- **REFERRAL NOTICE** – required by RESPA.

- **PROTECTING YOUR PRIVACY BROCHURE** – required by the Gramm-Leach-Bliley Act.

Please sign and return the originals of the following items:

- **TRUTH-IN-LENDING STATEMENT** (Any loan applicant may sign this disclosure.)
- **LOAN PROGRAM DISCLOSURE** (Provided only for Adjustable Rate Mortgages. Any loan applicant may sign this disclosure.)
- **MORTGAGE SERVICING TRANSFER DISCLOSURE** (Please be sure that all loan applicants sign this disclosure.)
- **REFERRAL NOTICE** (Any loan applicant may sign this notice.)

**IMPORTANT NOTICE:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**APPRAISAL:** An appraiser will contact the seller's representative, or you if this is a refinance loan, to schedule an appointment. Contact your Loan Representative with any questions you have. We are committed to providing you with the best possible customer service.

Please acknowledge your receipt of the items listed above by signing and returning one copy of this letter to us. Please retain the other copy for your records.

**ACKNOWLEDGEMENT**
Any Loan Applicant May Sign

LOAN APPLICANT'S SIGNATURE _____     DATE _____

Customer Contact:  **RANDEE TALMADGE**

Telephone Number:  **(510) 297-8755**

GF018A1 (08.15.04/1-04) E18A                                          CA

E18E

DISTRIBUTION:  1 COPY-RETURN SIGNED TO LENDER    1 COPY-LOAN APPLICANT    2 COPIES-FILE

*063*

LENDER'S USE ONLY

# LOAN PROGRAM DISCLOSURE

## PICK-A-PAYMENT℠ LOAN

### ADJUSTABLE RATE MORTGAGE
### CERTIFICATES OF DEPOSIT INDEX (CODI)                    0026714998

> This disclosure describes in a question-and-answer format important features of the Pick-a-Payment℠ Loan Program you are considering. Federal Reserve Regulation Z and the rules and regulations of the federal Office of Thrift Supervision require that World give this disclosure to you. This disclosure is accurate as of the date of printing. However, World reserves the right to make subsequent changes to it at any time regarding any matter it covers. Such changes may occur because of changes in policy, law or regulation or for any other reason. Some terms of loans on non-owner occupied properties may be different from those described in this disclosure. If you are considering a loan on a non-owner occupied property, please ask a Loan Representative about the differences.

**CAN THE INTEREST RATE AND PAYMENT AMOUNT CHANGE?**

Yes. Movement of an index causes the interest rate and payment amount to change. An index is an independent measure of interest rate activity.

**WHAT IS THE INDEX?**

The index for this loan is the average of the most recently published monthly yields on 3-month certificates of deposit (secondary market) for the twelve most recent calendar months as published by the Federal Reserve Board ("index"). 3-month certificates of deposit (secondary market) are an average of dealer offering rates on nationally traded certificates of deposit that are annualized based on a 360-day year or bank interest. As of the date of this disclosure, the Federal Reserve Board publishes the monthly yields on 3-month certificates of deposit in its Federal Reserve statistical release, H.15. For purposes of determining the index, "publish" means first made available to the public by the Federal Reserve Board.

World Savings calculates the average by adding the twelve most recently published monthly yields together and dividing the result by twelve. World then rounds* this result to the nearest 1,000th of one percentage point.

*World Savings uses the following rounding method. If the value of the 10,000th place is 5 or greater, then the 1,000th place rounds up. Otherwise, the 1,000th place remains the same. For example, 6.486**5** would round to 6.48**7** (up); 8.486**4** would round to 6.48**6** (remain the same).

**WHERE CAN I GET INFORMATION ABOUT THE INDEX?**

You can get information about monthly yields on 3-month certificates of deposit (secondary market) from:

-   the Federal Reserve Board's web site, (http://www.federalreserve.gov/),
-   the nearest branch of the Federal Reserve Bank listed in your local telephone directory, and
-   Federal Reserve statistical release H.15 which can be found in the Business Publications section of most public libraries.

**HOW DOES WORLD DETERMINE INTEREST RATE CHANGES?**

World determines interest rate changes by adding an amount (margin) that is fixed for the life of the loan to the current index. The current index is the most recently announced index value available on the date of each interest rate change. Please ask for World's current margin and interest rate.

**HOW DOES WORLD DETERMINE PAYMENT CHANGES?**

Subject to the payment change limits described below, World determines payment changes by calculating payments that amortize the loan. Amortize means to pay off the loan at its then current interest rate over its remaining term with equal payments.

**IS THE INITIAL INTEREST RATE BASED ON THE INDEX PLUS THE MARGIN?**

Yes.

**HOW IS THE INITIAL PAYMENT AMOUNT ESTABLISHED?**

You select an initial payment amount from a range of payment amounts provided by World. The range includes a minimum and a maximum initial payment amount. The maximum initial payment will not fully amortize the loan at the initial interest rate. The initial payment amount you select may not be sufficient to pay the full amount of interest due at the initial interest rate. This will cause the loan amount to increase as described below in the section "How Does The Principal Balance Change?" Please ask for the range of initial payments for the loan you are considering.

**HOW OFTEN CAN THE INTEREST RATE CHANGE?**

Monthly, beginning on the due date of the first regularly scheduled payment.

**HOW OFTEN CAN THE PAYMENT CHANGE?**

Annually. The payment can change every 12 payments beginning with the 13th payment. Each date on which the payment may change is a "Payment Change Date."

**ARE THERE ANY LIMITS TO THE AMOUNT THE INTEREST RATE MAY CHANGE?**

Yes. The maximum interest rate limit ("Lifetime Rate Cap") is between 2.000 and 8.500 percentage points over the initial index value plus margin. Please ask for World's current Lifetime Rate Cap.

**ARE THERE ANY LIMITS TO THE AMOUNT THAT PAYMENTS MAY CHANGE?**

Yes. The monthly payment cannot increase ("Payment Cap") more than 7-1/2% each year.

However,

-   the Payment Cap does not apply on the 10th, 15th, 20th, 25th or final Payment Change Dates;
-   the Payment Cap does not apply if the principal balance reaches the limits described in the answer to the next question.

**HOW DOES THE PRINCIPAL BALANCE CHANGE?**

The principal balance (loan amount) can change monthly.

When the monthly payment is more than sufficient to pay the full amount of interest due, World subtracts the amount that exceeds the interest due from the principal balance, resulting in a principal reduction.

At various times during the life of your loan the monthly payment may not be sufficient to pay the full amount of interest due. This can occur if the initial payment amount that you select is less than the full amount of interest due. This can also result from increases in the interest rate prior to the Payment Change Date or from a monthly payment that did not increase sufficiently to pay the full amount of interest due, because of the 7-1/2% Payment Cap.



* 0 6 6 *

LENDER'S USE ONLY

0026714998

If the monthly payment is not sufficient to pay the full amount of interest due, World adds this accrued but unpaid interest, called Deferred Interest, to the unpaid principal balance of the loan. Until repaid, Deferred Interest bears interest at the interest rate of the loan.

The principal balance may never exceed:

– 125% of the original principal balance amount for a loan that had an original loan amount of 85% or less of the property's appraised value or sales price (whichever is less); or

– 110% of the original principal balance amount for a loan that had an original loan amount greater than 85% of the property's appraised value or sales price (whichever is less).

If Deferred Interest caused the principal balance to reach these limits, World would immediately increase the payment without regard to the Payment Cap. The increased payment would pay off the loan at the then current interest rate and remaining term.

**WHAT ARE THE INITIAL AND MAXIMUM INTEREST RATES AND PAYMENTS FOR A $10,000 LOAN ORIGINATED IN AUGUST OF 2004?**

|  | Initial payment selected* | Maximum payment and year in which maximum payment occurs** |
|---|---|---|
| **5 YEAR TERM** | | |
| Minimum initial payment | $175.06 | $395.95  5th year |
| Maximum initial payment | $185.13 | $334.25  5th year |
| **15 YEAR TERM** | | |
| Minimum initial payment | $64.13 | $181.66  5th year |
| Maximum initial payment | $75.04 | $280.56  11th year |
| **30 YEAR TERM** | | |
| Minimum initial payment | $36.72 | $136.04  3rd year |
| Maximum initial payment | $48.98 | $136.38  4th year |

*The initial interest rate in the examples is 4.212%, which reflects an Index value of 1.162% plus a margin of 3.050%. Your initial interest rate may be different.

**The maximum interest rate in these examples is 12.712%, which reflects a Lifetime Rate Cap of 8.500% over the initial Index value plus margin. Your Lifetime Rate Cap may be different.

Your monthly payment can increase or decrease substantially based on changes in the interest rate.

**HOW CAN I CALCULATE THE INITIAL PAYMENT FOR THE AMOUNT I PLAN TO BORROW?**

To see what the initial payments would be:

step 1.. divide the amount you plan to borrow by $10,000; and then

step 2.. multiply the resulting amount by the monthly payment shown under the "initial payment selected" column of the immediately previous question.

For example,

for a **5 year term**, the monthly payment for a loan amount of $120,000 would be:

step 1.. $120,000 ÷ $10,000 = 12

step 2..12 X $175.06 = **$2,100.72** (minimum initial payment)
or
12 X $185.13 = **$2,221.56** (maximum initial payment)

for a **15 year term**, the monthly payment for a loan amount of $120,000 would be:

step 1.. $120,000 ÷ $10,000 = 12

step 2.. 12 X $64.13 = **$789.56** (minimum initial payment)
or
12 X $75.04 = **$900.48** (maximum initial payment)

for a **30 year term**, the monthly payment for a loan amount of $120,000 would be:

step 1.. $120,000 ÷ $10,000 = 12

step 2.. 12 X $36.72 = **$440.64** (minimum initial payment)
or
12 X $48.98 = **$587.76** (maximum initial payment)

**WHEN WILL I RECEIVE NOTICES OF CHANGES TO THE LOAN? WHAT INFORMATION WILL THEY INCLUDE?**
World sends a written notice at least 25 days before each Payment Change Date. The notice includes information about the payment amount, interest rate and loan balance changes.

**DOES THIS LOAN HAVE AN ASSUMPTION/DUE-ON-SALE PROVISION?**
If at origination your loan is not secured by additional non-real estate collateral, World will give written approval for a transfer (assumption) and the buyer (transferee) may assume your loan at its current interest rate provided:

1) the buyer meets World's then current credit standards;
2) the buyer makes a cash downpayment sufficient to meet World's then current underwriting standards;
3) World receives an assumption fee;
4) no previous transfer of the property has occurred since the original date of the loan; and
5) you and the buyer sign all required assumption documents.

The buyer might not receive the same Lifetime Rate Cap that you originally did. The buyer could receive a higher Lifetime Rate Cap based on then current market conditions.

If the loan program you are considering requires additional non-real estate collateral at the time of origination, the loan will not be assumable. You will receive additional information that will explain the loan program in greater detail.

Under certain circumstances, World could declare the entire outstanding loan amount immediately due and payable. Failure to pay could then result in the forced sale of the property securing the loan. This could occur:

– if there is more than one sale or transfer of the property; or
– if you sell or transfer the property to anyone without obtaining World's prior written consent.

**DOES THIS LOAN HAVE A PREPAYMENT CHARGE PROVISION?**
Some loan programs have a provision that requires that you pay a fee (a prepayment charge) if you make certain payments of principal before they are due (prepayments). Be sure to ask whether the loan program you are considering has a prepayment charge provision.

If the loan program you are considering does have a prepayment charge provision, you will receive several documents during the processing of your loan that explain the prepayment charge in detail.

**HOW CAN I GET INFORMATION ABOUT WORLD'S OTHER LOAN PROGRAMS?**
A Loan Representative will be happy to answer any questions you have and provide you with disclosures for other adjustable rate loan programs.

**IMPORTANT – SIGNATURE**
I have received a copy of this disclosure describing the Pick-a-Payment Loan Program. I understand that this disclosure is neither a commitment to make a loan nor a binding contract. The complete contractual terms and conditions of the loan are in the Note, Security Instrument, Modification(s) and Rider(s), if any.

_____        _____
Print Name                       Property Address

_____        _____
Signature                        Date

**Please return a signed copy of this disclosure to World and retain a copy for your records.**

AD162B1 (2004-03-3) U62C
CODI - PICK-A-PAYMENT LOAN

CA

LOAN TYPE 241

# MORTGAGE SERVICING TRANSFER DISCLOSURE

0026714998

**NOTICE TO MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGEMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

You are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 et seq.) which gives you certain rights under Federal Law. This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" means collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

## TRANSFER PRACTICES AND REQUIREMENTS

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you written notice of the assignment, sale or transfer of the servicing not less than 15 days before the date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. However, these requirements are satisfied if a notice of prospective transfer is provided to you at settlement (when title to your new property is transferred to you). The law allows a delay in the time of not more than 30 days after a transfer for servicers to notify you upon the occurrence of certain business emergencies.

Notices must contain the effective date of the transfer of the servicing of your loan to the new servicer, the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## COMPLAINT RESOLUTION

Section 6 of RESPA (12 U.S.C. § 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgement within 20

Business Days of receipt of your request. A qualified written request cannot be on a payment coupon or other payment medium supplied by the servicer. The qualified written request must be written correspondence which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receipt of your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

---

### SERVICING TRANSFER ESTIMATES

The following is the best estimate of what will happen to the servicing of your mortgage loan:

1. We may assign, sell, or transfer the servicing of your loan while the loan is outstanding.

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

[ x ]  0 to 25%       [ ]  26 to 50%       [ ]  51 to 75%       [ ]  76 to 100%

This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. This is our record of transferring the servicing of loans we have made in the past:

| YEAR | PERCENTAGE OF LOANS TRANSFERRED (Rounded to nearest quartile - 0%, 25%, 50%, 75% or 100%) |
|------|------------------------------------------------------------------------------------------|
| 2002 | 0% |
| 2003 | 0% |
| 2004 | 0% |

The estimates in 2. and 3. above do not include assignments, sales or transfers to affiliates or subsidiaries.

---

◄ • ►         ◄ • ►         ◄ • ►

**WORLD SAVINGS**
LENDER

## ACKNOWLEDGEMENT OF MORTGAGE LOAN APPLICANT

I/We have read this disclosure and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgement is a required part of the mortgage loan application.

Applicant's Signature                                      Date
**TOMMY B. GARNER**

Co-Applicant's Signature                                   Date

* 0 1 6 *

LENDER'S USE ONLY

AD085 (2004-03-3) Q85A

# MORTGAGE SERVICING TRANSFER DISCLOSURE

0026714998

**NOTICE TO MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGEMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

You are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 et seq.) which gives you certain rights under Federal Law. This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" means collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

## TRANSFER PRACTICES AND REQUIREMENTS

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you written notice of the assignment, sale or transfer of the servicing not less than 15 days before the date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. However, these requirements are satisfied if a notice of prospective transfer is provided to you at settlement (when title to your new property is transferred to you.) The law allows a delay in the time of not more than 30 days after a transfer for servicers to notify you upon the occurrence of certain business emergencies.

Notices must contain the effective date of the transfer of the servicing of your loan to the new servicer, the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## COMPLAINT RESOLUTION

Section 6 of RESPA (12 U.S.C. § 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgement within 20

Business Days of receipt of your request. A qualified written request cannot be on a payment coupon or other payment medium supplied by the servicer. The qualified written request must be written correspondence which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receipt of your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

---

**SERVICING TRANSFER ESTIMATES**

The following is the best estimate of what will happen to the servicing of your mortgage loan:

1. We may assign, sell, or transfer the servicing of your loan while the loan is outstanding.

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

[ x ]  0 to 25%      [ ]  26 to 50%      [ ]  51 to 75%      [ ]  76 to 100%

This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. This is our record of transferring the servicing of loans we have made in the past:

| YEAR | PERCENTAGE OF LOANS TRANSFERRED (Rounded to nearest quartile - 0%, 25%, 50%, 75% or 100%) |
|------|------|
| 2002 | 0% |
| 2003 | 0% |
| 2004 | 0% |

The estimates in 2. and 3. above do not include assignments, sales or transfers to affiliates or subsidiaries.

---

◄ ● ►      ◄ ● ►      ◄ ● ►

**WORLD SAVINGS**
LENDER

## ACKNOWLEDGEMENT OF MORTGAGE LOAN APPLICANT

I/We have read this disclosure and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgement is a required part of the mortgage loan application.

Applicant's Signature _____      Date _____

Co-Applicant's Signature _____      Date _____
**ROMELYN B. GARNER**

AD085 (2004-03-3) Q85A
Q85B



LENDER'S USE ONLY

| **WORLD SAVINGS** | **GOOD FAITH ESTIMATE OF SETTLEMENT COSTS** (THIS IS NOT A COMMITMENT TO LEND) |
|---|---|

BORROWER:  TOMMY GARNER
LOAN AMOUNT APPLIED FOR:     $364,000.00

DATE:     03/03/05
LOAN NUMBER:     0028714998

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates – the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| | | | |
|---|---|---|---|
| * # | 801 | LOAN ORIGINATION FEE PAID BY BORROWER | .00 |
| * # | 801.2 | BUYDOWN FEE PAID BY BORROWER | .00 |
| # | 801.4 | TAKE-OUT COMMITMENT FEE | .00 |
| * # | 802 | LOAN DISCOUNT FEE PAID BY BORROWER | .00 |
| * # | 802.1 | SALEABLE LOAN DISCOUNT FEE | .00 |
| * | 803 | APPRAISAL/PROPERTY EVALUATION FEE (Property Inspection Waiver Fee may be substituted) | 325.00 |
| * | 803.2 | APPRAISAL REVIEW FEE | .00 |
| | 804 | CREDIT REPORT FEE PAID BY LENDER | 7.30 POC/L |
| # | 807 | ASSUMPTION FEE | .00 |
| * # | 808 | TAX SERVICE FEE | 30.50 |
| # | 809 | STANDARD PROCESSING FEE (Paid at time of Application) | .00 |
| * # | 809 | STANDARD PROCESSING FEE (Paid at loan Closing) | 160.00 |
| # | 809.1 | MORTGAGE CREDIT CERTIFICATE (MCC) FEE | .00 |
| * # | 809.2 | EQUITY BUILDER SERVICING FEE | .00 |
| # | 810 | APPLICATION FEE (Paid at time of Application) | 171.00 |
| * # | 810 | APPLICATION FEE (Paid at loan Closing) | .00 |
| * # | 810.1 | CREDIT REVIEW FEE | 35.00 |
| # | 811 | TRUST REVIEW FEE | .00 |
| # | 812 | MORTGAGE BROKER FEE PAID BY BORROWER AT CLOSING | .00 |
| # | 812.1 | MISC BROKER FEES PAID BY BORROWER OUTSIDE CLOSING | .00 |
| | 812.2 | MORTGAGE BROKER FEE PAID BY LENDER | .00 |
| | 813 | INITIAL FLOOD ZONE DETERMINATION FEE | 4.00 |
| * # | 814 | ONGOING FLOOD ZONE MONITORING FEE | 9.00 |
| * # | 815 | FUNDING FEE | 50.00 |
| * # | 816 | RATE LOCK-IN FEE | .00 |
| * # | 817 | COMMITMENT FEE | .00 |
| * | 818 | DOCUMENT PREPARATION FEE | 150.00 |
| | 819 | LOAN SUBMISSION FEE PAID BY LENDER | .00 |
| | 820 | ELECTRONIC FACILITY FEE PAID BY LENDER | .00 |
| * # | 821 | LOAN SALES PROCESSING FEE | .00 |
| * # | 901 | INTEREST:  PREPAID INTEREST PAID AT CLOSING (Estimate based on maximum amount which may be collected)     30 DAYS @ 5.243% | 1,568.70 |
| * # | 902 | MORTGAGE INSURANCE PREMIUM | .00 |
| | 903 | HAZARD INSURANCE PREMIUM | 1,456.00 |
| * | 1001 | HAZARD INSURANCE RESERVE DEPOSIT | .00 |
| * # | 1002 | MORTGAGE INSURANCE RESERVE DEPOSIT | .00 |
| * | 1003 | PROPERTY TAX RESERVE DEPOSIT | .00 |
| # | 1101 | SETTLEMENT FEE | 781.50 |
| | 1103 | TITLE EXAMINATION FEE | .00 |
| | 1106 | NOTARY FEES | 20.00 |
| | 1107 | ATTORNEYS' FEES | .00 |
| | 1108 | TITLE INSURANCE PREMIUM | 1,418.00 |
| | 1111 | TAX CERTIFICATE FEE | .00 |
| # | 1112 | CLOSING PROTECTION LETTER (PA) | .00 |
| | 1201 | RECORDING FEE | 45.00 |
| | 1202 | CITY/COUNTY TAX/STAMPS/OTHER GOVERNMENT TRANSFER CHARGES | .00 |
| | 1203 | STATE TAX/STAMPS | .00 |
| | 1204 | INTANGIBLE PROPERTY/RECORDING /MORTGAGE TAX | .00 |
| | 1301 | IMPROVEMENT LOCATION CERTIFICATE/SURVEY/PLOT PLAN FEE | .00 |
| | 1302 | PEST INSPECTION FEE | .00 |
| # | 1303 | COURIER FEE | 50.00 |
| # | 1304 | WIRE FEE | 50.00 |
| # | 1305 | ESTIMATED MISCELLANEOUS CLOSING AGENT CHARGES | 200.00 |
| # | 1306 | LOAN TIE-IN FEE | .00 |

**TOTAL ESTIMATED BORROWER PAID SETTLEMENT COSTS**         **$6,523.70**

\* TO BE DEDUCTED FROM THE LOAN FUNDS

# INCLUDED IN CALCULATION OF ANNUAL PERCENTAGE RATE (APR)

"POC/L" NEXT TO AN ITEM DESIGNATES A COST PAID BY LENDER OUTSIDE OF CLOSING (NOT INCLUDED IN TOTAL BORROWER PAID COSTS)

"PC/L" NEXT TO AN ITEM DESIGNATES A COST PAID BY LENDER AT CLOSING (NOT INCLUDED IN TOTAL BORROWER PAID COSTS)

GF017A1 (12.15.04/4-04) E17A          Page 1          CA          LENDER'S USE ONLY

* 0 6 4 *

| **WORLD SAVINGS** | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS – CONTINUED (THIS IS NOT A COMMITMENT TO LEND) | |
|---|---|---|
| | | LN. NO.: 0026714998 |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take the first lien on the property.

This form does not cover all items you may be required to pay in cash at settlement, for example, flood insurance premiums or a reserve deposit for flood insurance premiums.

**FOR INFORMATION  ABOUT TAX CONSEQUENCES OF CLOSING YOUR LOAN, PLEASE CONSULT YOUR TAX ADVISOR.**

Pursuant to RESPA if a lender requires the use of a particular provider of a settlement service for which the borrower pays any cost, then lender must give the name, address and telephone number of such providers. Listed below are the service providers World Savings has regularly required borrowers to use during the last 12 months. The estimates of costs (if any) shown on the corresponding line number on page 1 are based upon charges normally billed by these service providers.

● 803 – If applicable, appraisal services may be provided by either World Savings appraisers or independent contractors. Fannie Mae may waive a property inspection for which the fee is substantially less. Fees for inspection waivers will be paid to Fannie Mae; World Savings has an ongoing relationship with Fannie Mae.

    Fannie Mae
    3900 Wisconsin Avenue NW
    Washington DC, 20016–2892
    202–752–7000

● 804 – Credit Report Fee Paid by Lender

| | |
|---|---|
| CBC Companies, Inc. | Equifax Information Service |
| 520 E. Main Street | 5505 Peachtree Dunwoody Rd 600 |
| Carnegie, PA 15106 | Atlanta, GA 30374–0241 |
| 800–925–0298 | 800–685–1111 |
| | |
| Trans Union Corporation | Experian Consumer Service |
| 760 Sproul Road | 701 Experian Pkwy – PO Box 949 |
| Springfield, PA 19064–0390 | Allen, TX 75013–0949 |
| 800–632–1765 | 888–397–3742 |

● 808 – Tax Service will be provided by:
    First American Real Estate Tax Services
    8435 North Stemmons Freeway
    Dallas, TX 75247
    800–229–8426

● 813 and 814 – If there are estimates for Initial Flood Zone Determination Fee and Ongoing Flood Zone Monitoring Fee, these services will be provided by:
    First America Flood Data Services
    11902 Burnet Road
    Austin, TX 78758
    512–834–9595

● 902 – If there is an estimate for mortgage insurance premium, this service may be provided by one of the following companies:

| | |
|---|---|
| Radian Guaranty Inc. | PMI Mortgage Insurance Company |
| 400 Market Street, 2nd Floor | 3003 Oak Road |
| Philadelphia, PA 19106 | Walnut Creek, CA 94597 |
| 877–723–4261 | 800–366–1143 |
| | |
| United Guaranty Insurance | Republic Mortgage Insurance Company |
| 230 N. Elm Street | 190 Oak Plaza Blvd. |
| Greensboro, NC 27420 | Winston-Salem, NC 27105 |
| 888–822–5584 | 800–884–7642 |

**CONTINUED ON NEXT PAGE**

| **WORLD SAVINGS** | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS – CONTINUED (THIS IS NOT A COMMITMENT TO LEND) | LN NO.:  0026714998 |
|---|---|---|

- 1206 –  If applicable, homebuyer counseling services may be provided by one of the following non-profit organizations.

ACORN Housing Corporation, Inc.
650 S. Clark Street, Suite 301
Chicago, IL 60605
312–939–1611

ACORN Housing Corporation, Inc.
1018 West Roosevelt Avenue
Phoenix, AZ 85007
602–253–1111

Housing Partnership, Inc.
4016 Broadway Avenue
West Palm Beach, FL 33407
561–841–3500

Neighborhood Housing Services of Southern Nevada, Inc.
1849 Civic Center Drive
North Las Vegas, NV 89030
702–649–0998

THIS SPACE INTENTIONALLY LEFT BLANK

## WORLD SAVINGS | FEDERAL TRUTH IN LENDING DISCLOSURE REQUIRED BY REGULATION Z

Customer's Name
TOMMY B. GARNER, ET AL.

Date  03/03/05
Loan No.   0026714998

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total price of your purchase on credit including your down payment of NOT APPLICABLE. |
| 5.277% | $398,597.11 | $360,894.30 | $757,491.41 | NOT APPLICABLE. |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due: MONTHLY beginning on |
|---|---|---|
| 12 | $  1,336.34 | 06/01/05 |
| 12 | 1,436.56 | 06/01/06 |
| 12 | 1,544.30 | 06/01/07 |
| 12 | 1,660.13 | 06/01/08 |
| 12 | 1,784.63 | 06/01/09 |
| 12 | 1,918.48 | 06/01/10 |
| 12 | 2,062.37 | 06/01/11 |
| 12 | 2,217.04 | 06/01/12 |
| 263 | 2,234.76 | 06/01/13 |
| 1 | 2,231.33 | 05/01/35 |

VARIABLE RATE: THIS LOAN CONTAINS AN ADJUSTABLE RATE FEATURE. SEE THE ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT PREVIOUSLY GIVEN TO YOU.
This loan  DOES NOT HAVE A DEMAND FEATURE.

Insurance:     You may obtain property insurance from anyone you want who is acceptable to the Lender.

Security:      You are giving a security interest in the real property located at    1788 SHERBROOKE STREET, SAN
               DIEGO, CA  92139.

Filing Fees:   $   45.00

Late Charge:   If a payment is late, you will be charged    5.00 % of the payment.

Prepayment:    If you pay off the loan early, you      MAY      have to pay a penalty and you    WILL NOT   be entitled to a
               refund of  ANY PART OF THE FINANCE CHARGE ALREADY PAID.

Assumption:    SOMEONE BUYING YOUR HOUSE CAN ASSUME THE REMAINDER OF THE LOAN UNDER CERTAIN
               TERMS AND CONDITIONS. TERMS MAY BE DIFFERENT FROM YOUR ORIGINAL TERMS - SEE
               YOUR ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT.

Due on Sale:   If the property securing the loan is sold or transferred to anyone without first obtaining Lender's written
               consent, all sums owed could become immediately due and payable. In this event failure to pay all the sums
               declared due and payable may result in the forced sale of the property.

See your Contract documents for additional information about non-payment, default, any required repayment in full before the
scheduled date and other important terms and conditions of your loan.
               ALL NUMERICAL DISCLOSURES EXCEPT THE LATE PAYMENT DISCLOSURE ARE ESTIMATES.

By signing below, you acknowledge that you received a copy of this FEDERAL TRUTH IN LENDING DISCLOSURE.

TOMMY B. GARNER

Date

CA

GF004A1 (03.15.00/1-00) EQ4A
UPFRONT        DISTRIBUTION:   1 COPY-RETURN SIGNED TO LENDER    1 COPY-CUSTOMER    2 COPIES-FILE

^ 0 2 2 ^
LENDER'S USE ONLY

## WORLD SAVINGS | PREPAYMENT FEATURE ACKNOWLEDGEMENT

LOAN NUMBER: 0026714998

DATE: 03/03/05
LOAN PROGRAM: ADJUSTABLE RATE
MORTGAGE PICK-A-PAYMENT LOAN

BORROWER(S):
TOMMY B. GARNER
ROMELYN B. GARNER

PROPERTY ADDRESS:
1788 SHERBROOKE STREET
SAN DIEGO, CA 92139

You have received a loan program that includes a prepayment fee provision. The following is the prepayment fee provision that will appear in your loan document.

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL BEFORE IT IS DUE IS CALLED A "PREPAYMENT". WHEN I MAKE A PREPAYMENT, I WILL TELL THE LENDER IN WRITING THAT I AM DOING SO. THE LENDER MAY REQUIRE THAT ANY PARTIAL PREPAYMENTS BE MADE ON THE DATE MY REGULARLY SCHEDULED PAYMENTS ARE DUE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR AMOUNT OF MY REGULARLY SCHEDULED PAYMENTS UNLESS THE LENDER AGREES TO THOSE CHANGES IN WRITING. I MAY PAY DEFERRED INTEREST ON THIS NOTE AT ANY TIME WITHOUT CHARGE AND SUCH PAYMENT WILL NOT BE CONSIDERED A "PREPAYMENT" OF PRINCIPAL. DURING THE FIRST 3 YEARS OF THE LOAN TERM IF I MAKE ONE OR MORE PREPAYMENTS THAT, IN THE AGGREGATE, EXCEED $5,000 IN ANY CALENDAR MONTH, I MUST PAY A PREPAYMENT CHARGE EQUAL TO 2% OF THE AMOUNT SUCH PREPAYMENTS EXCEED $5,000 IN THAT CALENDAR MONTH. AFTER THE FIRST 3 YEARS OF THE LOAN TERM, I MAY MAKE A FULL OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE.

By signing below, I/we acknowledge and agree that:

1. As a federally chartered savings institution acting in accordance with the federal laws and regulations governing federally chartered savings institutions, WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND OR ASSIGNEES, has an enforceable legal right to the prepayment fee described above, even if there is a state or local law to the contrary.

2. The prepayment fee provision written above constitutes the entire prepayment fee provision that will appear in my/our Note and supersedes any other written or oral discussion to the contrary.

3. The fact that there is a prepayment fee provision is disclosed on the enclosed Truth-in-Lending Disclosure.

4. I/We have been given an opportunity to discuss the prepayment fee provision with a Loan Representative and I/we fully understand it.

5. If I/We select a different loan program subsequent to the date of this Acknowledgement, World will provide a new Acknowledgement that will supersede this and other forms related to the above named loan program. This Acknowledgement supersedes any previous Acknowledgement given to me/us.

6. I/we have received a copy of this form.

### SIGNATURE PAGE FOLLOWS

GF173A (07.01.04/1-04) H73A                                                          CA
DISTRIBUTION:   1 COPY-RETURNED SIGNED TO WORLD   1 COPY-CUSTOMER   1 COPY-LOAN CENTER
                1 COPY-LOAN FILE                  Page 1 of 2

LENDER'S USE ONLY

## PREPAYMENT FEATURE ACKNOWLEDGEMENT - SIGNATURE PAGE

0026714998

Borrower(s) Signature(s)

TOMMY B. GARNER

ROMELYN B. GARNER

NOTE: AT YOUR REQUEST AND SUBJECT TO THE FOLLOWING REQUIREMENTS, WORLD WILL WAIVE OR
REFUND THE PREPAYMENT FEE ON THIS LOAN IF A NEW FIRST MORTGAGE LOAN THAT REPLACES
THIS LOAN IS OBTAINED FROM WORLD.

THE NEW LOAN MAY NOT INCLUDE A PAYMENT BY WORLD TO YOU, THE BUYER OF THIS
PROPERTY, A MORTGAGE BROKER, OR ANY OTHER THIRD PARTY.  THE NEW LOAN MUST BE
SECURED BY PROPERTY THAT MEETS WORLD'S APPRAISAL STANDARDS AND IS LOCATED
WITHIN WORLD'S LENDING TERRITORY.  THE NEW LOAN MUST MEET WORLD'S THEN CURRENT
UNDERWRITING CRITERIA.*  THERE ARE SEVERAL WAYS TO OBTAIN A NEW LOAN.  THEY ARE:

- YOU OBTAIN A NEW FIRST MORTGAGE LOAN FROM WORLD ON THIS PROPERTY;
- YOU OBTAIN A NEW LOAN FROM WORLD ON A DIFFERENT PROPERTY AND THIS LOAN IS PAID
  IN FULL AT THE SAME TIME AS THE CLOSING OF THE NEW LOAN;
- YOU OBTAIN AND CLOSE A NEW LOAN FROM WORLD ON A DIFFERENT PROPERTY NO LATER THAN
  180 DAYS AFTER THIS LOAN IS PAID IN FULL (IN THIS CASE WORLD WILL REFUND THE
  PREPAYMENT FEE UPON YOUR WRITTEN REQUEST); OR
- YOU SELL THIS PROPERTY AND THE BUYER FINANCES THE PURCHASE WITH A NEW LOAN FROM
  WORLD.

* TERRITORIES IN WHICH WORLD MAKES LOANS, AS WELL AS WORLD'S UNDERWRITING CRITERIA,
INCLUDING BUT NOT LIMITED TO APPRAISAL STANDARDS, LOAN-TO-VALUE RATIOS, AND STANDARDS
OF CREDITWORTHINESS, ARE SUBJECT TO CHANGE BY WORLD WITHOUT NOTICE.

# WORLD SAVINGS

0026714998

## NOTICE OF FIRE/HAZARD INSURANCE REQUIREMENTS

Thank you for choosing World as your mortgage lender. Please review these insurance requirements carefully. It may take several weeks for you to shop for and purchase a hazard insurance policy. Therefore, we suggest that you contact insurance providers as soon as possible. This will help to prevent a delay in your loan closing, since we are unable to close any loan without proof of an in-force hazard insurance policy.

Flood hazard insurance is a requirement for some loans. If it is a requirement for your loan and we approve your application, we will notify you of flood insurance requirements.

1.  We accept insurance policies from the following types of companies: a) capital stock companies or b) non-assessable mutual or non-assessable reciprocal companies with 10 years or more of successful operation as listed in the current Best's Insurance Reports.

    Acceptable insurance class ratings are:

---

| WORLD SAVINGS | IMPORTANT CLOSING REQUIREMENT |
|---|---|

Loan Number:   0026714998

## PLEASE READ

**Your World loan cannot close until you bring acceptable proof of fire/hazard insurance to the closing.**

**Acceptable proof of insurance is defined in item 7 of the "Notice of Fire/Hazard Insurance Requirements" form provided by World.**

**Please review these requirements with your insurance agent.**

**NOTICE OF FIRE/HAZARD INSURANCE REQUIREMENTS (CONT'D)** 0026714998

6. DEDUCTIBLES:

• For 1-4 unit residential properties (other than Planned Unit Developments (PUDs) and Condominiums) the deductible portion of the policy may not exceed $1,000.

• PUDs require a master or blanket hazard insurance policy covering the common elements with a maximum deductible amount of the lesser of $10,000 or 1% of the face amount of the policy. Additionally, there must be hazard insurance coverage for the individual unit. This can be in the form of an individual policy with a maximum deductible of $1,000 or a certificate of individual unit coverage under the master or blanket policy with a maximum deductible of $1,000.

• Condominium units require a master or blanket hazard insurance policy covering both the common elements and the individual units with a maximum deductible of the lesser of $10,000 or 1% of the face amount of the policy.

• 5+ Residential units require a hazard insurance policy with the deductible portion of the policy not to exceed $1,000 without prior written approval from World Savings.

7. Acceptable proof of insurance must be delivered to the closing agent prior to loan closing. Any of the following is acceptable proof of insurance: a) the original policy or certified copy of original policy; b) evidence of insurance signed by insurance agent; c) declaration page of the policy or d) binder (binders are acceptable only in CALIFORNIA, CONNECTICUT, DELAWARE, IDAHO, MARYLAND, MASSACHUSETTS, MINNESOTA, NEBRASKA, NEVADA, NEW HAMPSHIRE, NEW YORK, NORTH CAROLINA, OREGON, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, VIRGINIA, WASHINGTON AND WISCONSIN).

BUILDER'S RISK POLICIES ARE NOT ACCEPTABLE IN ANY STATE.

In all states except California, on a purchase transaction the Borrower must bring to closing either a paid receipt for the first year's premium (six months insurance premium for 1-4 unit residential properties in Florida) or a certified check payable to the insurance company; in this case, the Closing Agent must send the check to the insurance company and forward a copy of the certified check to World with closing documents.

In California, prior to requesting funds on a purchase transaction the Closing Agent must have in hand either a paid receipt for the first year's insurance premium or a certified check made payable to the insurance company; in this case, the Closing Agent must send the check to the insurance company and forward a copy of the certified check to World with closing documents.

8. ESCROW ACCOUNT
To request an escrow account for the payment of hazard insurance premiums, contact your Loan Representative and be prepared to provide a copy of a paid receipt for the first year's insurance premium and/or an insurance policy indicating the premium amount prior to the loan documents being sent to the closer.

Note: Hazard insurance escrow accounts are not available on a) Condominium/PUDs that are covered by a blanket policy or b) Equity Line of Credit loans.

9. The terms of our loan documents require maintenance of continuous insurance coverage. If at any time during the life of the loan, a policy is cancelled or replaced or an insurance agent is substituted, we must receive written evidence of the insurance and written evidence of the substitution of the insurance agent. Written evidence of insurance is defined as: A COPY OF THE REINSTATEMENT NOTICE FOR THE CANCELLED POLICY OR A COPY OF THE REPLACEMENT POLICY - BINDERS ARE ACCEPTABLE IN THE STATES NOTED IN ITEM 7 ABOVE.

NOTE: If we do not receive such evidence prior to the termination date of the previous coverage, we may at our sole option, obtain an insurance policy for our benefit only, which would not protect your interest in the property or the contents. We would charge the premium due under such a policy to your loan and the loan payment would increase accordingly.

We may assess a processing fee and our affiliated insurance agent could collect a commission from the insurer. The cost for such insurance could be at least two to five times greater and provide you with less protection than insurance you could purchase directly from an insurer.

**Please complete the agent information section and sign the acknowledgement below. Return a signed copy of this Notice of Fire/Hazard Insurance Requirements to us prior to closing. Please forward a copy of these instructions to your insurance agent and keep a copy for your own records.**

AGENT INFORMATION:

AGENT'S NAME: _____    AGENT'S TELEPHONE #: _____

AGENT'S ADDRESS: _____
                                                        (City, State, Zip Code)

ACKNOWLEDGEMENT:

By signing below, I/we acknowledge that: 1) I/we have read and understand these requirements; 2) I/we consent to the foregoing; 3) I/we have received a copy of this document; and 4) I/we agree and understand that these requirements are subject to change without notice.

_____  /  _____  /
Signature of Borrower          Date   Signature of Borrower          Date

| **WORLD SAVINGS** | **REFERRAL NOTICE** |
|---|---|

To:  TOMMY B. GARNER
     ROMELYN B. GARNER

Date:  03/03/05

Loan No.:  0026714998

Property Address:  1788 SHERBROOKE STREET
                   SAN DIEGO, CA  92139

From:  World Savings

This is to give you notice that WORLD SAVINGS BANK, FSB, * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ("World Savings") has a business relationship with World Savings Insurance Agency ("WSIA"). World Savings and WSIA are both wholly-owned subsidiaries of Golden West Financial Corporation. World Savings provides certain loan applicant referrals for insurance business to WSIA. Because of this relationship, a referral may provide World Savings a financial or other benefit.

Set forth below is the estimated range of charges by WSIA for the settlement service listed. You are NOT required to use WSIA as a condition for settlement of your loan on the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

Hazard Insurance Premium Range (per $1,000 coverage):

1 UNIT . . . . . . . . . . . $2.65  -  $23.92

2 UNITS . . . . . . . . . $2.65  -  $26.31

3 OR 4 UNITS . . . . . $4.15  -  $33.49

Actual premiums depend on the square footage, age and location of the property, the amount of the deductible, whether the property is owner or tenant occupied, and the amount of insurance required by World Savings. Borrowers may obtain other optional coverage for liability, contents, medical or other special risks such as earthquake or flood protection. All insurance coverage is subject to certain conditions and approval by insurer; restrictions may apply. THIS IS NOT A QUOTE, SOLICITATION, OFFER OR COMMITMENT TO INSURE THE SUBJECT PROPERTY.

### ACKNOWLEDGEMENT

I/We have read this disclosure form, and understand that World Savings may refer me/us to purchase the above-described settlement service from WSIA, and may receive a financial or other benefit as the result of such referral.

_____
Applicant's Signature

_____
Date

_____
Co-applicant's Signature

_____
Date

GF505 (10.01.04/2-04) F05A                                CA



LENDER'S USE ONLY

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# # 150801    — MB

## May 12. 2008
## 13:41:48

## Civ Fil Non-Pris

USAO #.: 08CV0847
Judge..: WILLIAM MCCURINE, JR
Amount.:                    $350.00 CA

## Total-> $350.00

FROM: ROMELYN B GARNER, PRO SE
      VS WORLD SAVINGS BANK AND
      GOLDEN WEST SAVINGS ASSN

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Romelyn B. Garner, Pro se

**DEFENDANTS**
WORLD SAVINGS BANK, and GOLDEN WEST SAVINGS ASSN.

FILED

08 MAY 12 PM 1:48

**(b)** County of Residence of First Listed Plaintiff  SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  TEXAS
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Romelyn B. Garner, Pro se
1788 Sherbrooke St, San Diego, California 92139. (619) 434-3395

Attorneys (If Known)

DEPUTY

08 CV 0847 J WMc

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        (U.S. Government Not a Party)

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        another district
        (specify)

☐ 6  Multidistrict
        Litigation

☐ 7  Appeal to District
        Judge from
        Magistrate
        Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC 1651 et seq.
Brief description of cause:
TILA Violations

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
05/12/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 150801  AMOUNT $350—  APPLYING IFP  JUDGE  MAG. JUDGE
ND 05/12/08